**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JAEMIIR MCELROY**<br><br>Plaintiff,<br><br>v.<br><br>**CITY OF CANTON; OFFICER BRANDON MOMIROV; JOHN D. GABBARD, CHIEF OF POLICE; SERGEANT LARRY LEGG; DETECTIVE MATTHEW THOMAS; DETECTIVE CURTIS A. GUTSCHER II; OFFICER MICHAEL D. BROWN; DETECTIVE J'THAN K. HAMPTON; OFFICER SPENCER ZERNECHEL; and OFFICER COLE WILSON**<br><br>Defendants. | ) | CASE NO.:<br><br>JUDGE:<br><br>**<u>COMPLAINT</u>**<br><br>**(Jury Demand Endorsed Hereto)** |

Plaintiff Jaemiir McElroy ("Plaintiff"), by and through undersigned counsel, submits this Complaint against Defendants City of Canton, Chief John D. Gabbard, Officer Brandon Momirov, Detective Matthew Thomas, Detective Curtis A. Gutscher II, Officer Michael D. Brown, Officer Spencer Zernechel, and Officer Cole Wilson, (collectively, "Defendants"), and alleges as follows:

## I. INTRODUCTION

1. This action arises out of the cruel and senseless violence of a Canton Police Officer against Plaintiff Jaemiir McElroy, who was unnecessarily kicked, taken to the ground, and injured, despite not resisting or posing any threat of harm to officers or others.

2. Plaintiff alleges, in light of binding Sixth Circuit precedent, that Defendant Brandon Momirov ("Defendant Momirov") acted contrary to clearly established constitutional law that, where a suspect is "surrendering an unresisting," a subsequent gratuitous aggression constitutes excessive force. *Kidis v. Reid*, 976 F.3d 708, 720 (6th Cir. 2020) (citing *Cole v. Lucas County*, 799 F.3d 530,540 (6th Cir. 2015) (explaining that under the Fourth Amendment, "assaults on subdued, restrained, and nonresisting arrestees are impermissible")).

3. Plaintiff seeks damages pursuant to 42 U.S.C. § 1983, for deprivation of Plaintiff's clearly established rights as secured by the Fourth Amendment of the United States Constitution against: (1) Defendant City of Canton ("Defendant Canton") for its unconstitutional policies, customs, and/or practices under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and its progeny, (2) Defendant Momirov individually and in his respective capacity as a City of Canton Police Officer, for his respective violation of Plaintiff's rights to be free from reckless conduct, needless violence, and the use of excessive force, and (3) the Responding Officer Defendants named herein, for their failure to intervene or their empowerment of Defendant Momirov to effectuate the use of excessive force on Plaintiff, which in fact caused Plaintiff's constitutional deprivation.

## II. <u>JURISDICTION AND VENUE</u>

4. This Court has federal question subject matter jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1343, as this action is brought, pursuant to 42 U.S.C. § 1983, to redress a deprivation of constitutional rights as set forth herein.

5. This Court has personal jurisdiction over Defendants, and venue is proper in this Court under 28 U.S.C. § 1391 (b)(1)-(2), because all incidents, events, and occurrences giving rise

to this action occurred in the Northern District of Ohio and, upon information and belief, all the parties reside in this judicial district.

## III. PARTIES

6. At all times relevant herein, Plaintiff is/was a natural person residing in the City of Canton, Stark County, Ohio.

7. Defendant Canton is a municipal corporation located in Stark County, State of Ohio and, at all times relevant to this action, employed Defendants named herein as employees within the City of Canton Police Department.

8. Defendant Canton maintains an active police force by and through its police department, which lists as one of its guiding principles: "To act with urgency to resolve conflicts in the community, applying common sense, honesty, and fairness in our service."

9. The Directory of Public Safety and Chief of Police for Defendant Canton issue the "Canton Police Department Rules and Regulations," to define the police purpose and the duties and conduct of all members of the Canton Police Department.

10. The Canton Police Department Rules and Regulations are organized in a manual.

11. According to the Foreword of the manual containing the Canton Police Department Rules and Regulations:

   a. "Employees [of the City of Canton Police Department] are presumed to have knowledge of federal, state, and municipal ordinances in force, as well as the Rules and Regulations in this manual."

   b. "It shall be the responsibility of all employees to become thoroughly familiar with the contents of this manual."

12. According to page 4 of the Canton Police Department Rules and Regulations:

a. "The law enforcement officer shall assiduously apply himself[/herself] to the study of the principles of the laws which He[/She] is sworn to uphold."

b. "The first duty of a law enforcement officer, as upholder of the law, is to know its bounds upon Him[/Her] in enforcing it."

c. The law enforcement officer "will make certain of his[/her] responsibilities in the particulars of their enforcement, seeking aid from his[/her] superiors in matters of technicality or principle when these are not clear to him[/her]."

13. According to page 15 of the Canton Police Department Rules and Regulations:

a. Supervisory officer is defined as, "Any member of the Police Department who attains the rank of Sergeant or above."

14. According to page 5 of the Canton Police Department Rules and Regulations:

a. Law enforcement officers "shall be mindful of [their] responsibilit[ies] to pay strict attention to the selection of means in discharging the duties of [their] office[s]."

b. "Violations of law or disregard for public safety and property on the part of an officer are intrinsically wrong."

15. According to page 19 of the Canton Police Department Rules and Regulations:

a. "The words 'shall' and 'will' as used herein shall indicate that the action required is mandatory."

16. According to page 5 of the Canton Police Department Rules and Regulations, law enforcement officers:

a. Will "conduct [their] private [lives] that the public will regard [them] as an example of stability, fidelity, and morality."

b. Shall "deal with individuals of the community in a manner calculated to instill respect for its laws and its police service."

c. Shall "use powers of arrest strictly in accordance with the law and with due regard to the rights of the citizens concerned."

d. Shall "conduct [their] official [lives] in such a manner as will inspire confidence and trust."

e. Shall "at all times, have a clear appreciation of his responsibilities and limitations regarding detention of [a law] violator."

f. Shall conduct themselves "in such a manner as will minimize the possibility of having to use force."

17. According to page 67 of the Canton Police Department Rules and Regulations:

a. "No [law enforcement] officer shall use more force in any situation than is reasonable and necessary under the circumstances."

18. Defendants violated the aforesaid Canton Police Department Rules and Regulations.

19. Defendant Momirov is/was a natural person residing in Stark County, Ohio, and is/was an employee within the City of Canton Police Department.

20. Defendant Chief John D. Gabbard ("Defendant Chief Gabbard" and "Defendant Chief") is/was a natural person residing in Stark County, Ohio, and is/was an employee within the City of Canton Police Department, and the acting Chief of Police and top decision maker and policy maker at the City of Canton regarding the Canton Police Department and all employees thereof.

21. Defendant Sergent Larry Legg ("Defendant Sergeant Legg") is a police officer employed by Defendant Canton and a supervisor of Defendant Momirov, while also ratifying/condoning the use of excessive force.

22. The following Patrol Officers and Detectives (collectively, the "Responding Officer Defendants") employed by Defendant Canton are named as Defendants to this action and were involved in the attack on Plaintiff on August 24, 2024, as follows:

a. Defendant Detective Matthew Thomas ("Defendant Thomas") is/was a detective employed by Defendant Canton (failed to intervene).

b. Defendant Detective Curtis A. Gutscher II ("Defendant Gutscher") is/was a detective employed by Defendant Canton (failed to intervene).

c. Defendant Detective J'than K. Hampton ("Defendant Hampton") is/was a detective employed by Defendant Canton (failed to intervene).

d. Defendant Officer Spencer Zernechel ("Defendant Zernechel") is/was a police officer employed by Defendant Canton (failed to intervene).

e. Defendant Officer Michael D. Brown ("Defendant Brown") is/was a police officer employed by Defendant Canton (failed to intervene).

f. Defendant Officer Cole Wilson ("Defendant Wilson") is/was a police officer employed by Defendant Canton (failed to intervene).

23. Redress is being sought from all Defendants in their official and individual capacities, and all Defendants were acting under and/or outside of color of law and/or pursuant to the policies, customs, and/or usages of the City of Canton and/or the Canton Police Department.

## IV. <u>STATEMENT OF FACTS</u>

24. All preceding paragraphs are incorporated as if fully rewritten herein.

25. On the evening of August 24, 2024, Plaintiff is in the parking lot of a residential housing complex with his friends and brother, located in the 1800 block of Morris Avenue NE, in Canton, Stark County, Ohio.

26. Defendant Thomas turns into a separate entrance to the housing complex parking lot as Plaintiff is present.

27. Defendant Thomas exits his police cruiser and reports two individuals running through the parking lot, neither of whom are Plaintiff.

28. Defendant Thomas walks through a common green area of the housing complex toward Plaintiff, Plaintiff's brother, and three other individuals with his service weapon drawn.

29. Defendant Thomas directs Plaintiff and the other individuals to "stop where you are."

30. Plaintiff and the other individuals are standing in plain view of Defendant Thomas.

31. Defendant Thomas is not confronted with any weapon, verbal threats of using a weapon, or threatening gestures by Plaintiff.

32. Plaintiff and the other individuals are not brandishing any firearms or objects that could be perceived as a threat or weapon.

33. Defendant Thomas draws and points his service weapon and weapon-mounted light at Plaintiff and the other individuals.

34. Defendant Thomas commands Plaintiff and the other individuals to "stop walking."

35. Plaintiff remains standing in the parking lot in the sightline of Defendant Thomas.

36. Plaintiff asks, "What do you mean stop walking?"

37. Defendant Thomas tells Plaintiff: "I mean stop walking."

38. Plaintiff stops walking.

39. Defendant Thomas points his service weapon at one individual, who remains in his sightline apart from Plaintiff and the other individuals.

40. Defendant Thomas directs the individual to come closer to Plaintiff and the other individuals.

41. Plaintiff remains standing in the parking lot in the sight of Defendant Thomas.

42. Some of the individuals continue to slowly pace around while remaining within the sight of Defendant Thomas.

43. Plaintiff does not run away from the officers, make any threatening gestures towards the officers, nor verbally threaten the officers.

44. Despite Plaintiff's compliance, Defendant Thomas makes a radio call for backup, stating that he had "five at gunpoint in this parking lot not really complying; I could use more units."

45. Meanwhile, Defendant Momirov, along with Defendant Gutscher and the other Responding Officer Defendants are in a common green area of the housing complex.

46. Defendant Momirov hears the radio call from Defendant Thomas.

47. Defendant Momirov runs toward Plaintiff and the other individuals in the parking lot.

48. At or around the same time, Defendant Thomas points his service weapon and weapon-mounted light towards Plaintiff.

49. Defendant Thomas shouts directly at Plaintiff, stating: "Mr. McElroy, stop walking; you're detained; stop moving."

50. Plaintiff again complies.

51. The Responding Officer Defendants arrive at the scene and address Plaintiff and the other individuals in the parking lot.

52. One of the Responding Officer Defendants on scene directs Plaintiff and the individuals to get "down on your knees; get down on your knees; all you guys, on your knees now."

53. The Responding Officer Defendants direct Plaintiff and the other individuals to "get on the ground right now, everybody get on the f***ing ground, get on the ground. Comply!"

54. Multiple Responding Officer Defendants point their service weapons at Plaintiff and the other individuals.

55. Plaintiff and the other individuals go down onto their knees.

56. The other individuals in the parking lot drop from their knees to the ground on their stomachs.

57. Plaintiff, while on his knees, raises his hands above his head.

58. One of the Responding Officer Defendants points his service weapon at Plaintiff's head while Plaintiff is still on his knees with his hands raised in the air above his head.

59. At this time, Officer Momirov arrives on scene.

60. Defendant Momirov continues running directly towards Plaintiff, despite seeing Plaintiff on his knees with his hands raised in the air, and with one of the Responding Officer Defendants on scene pointing his service weapon at Plaintiff's head.

61. The distance between Defendant Momirov and Plaintiff decreases as Defendant Momirov approaches him.

62. Defendant Momirov is not stopped by any of the Responding Officer Defendants.

63. Plaintiff makes no sudden movements towards Defendant Momirov, no verbal threats, and no threatening gestures towards the officers on scene.

64. Without trying to talk with Plaintiff, the detained individuals, or another officer on scene, Defendant Momirov raises his left leg and kicks Plaintiff in the sternum and neck.

65. When Defendant Momirov kicks Plaintiff, the following is occurring:

a. Plaintiff is kneeling on the ground.

b. Plaintiff's hands are above his head in the air.

c. Plaintiff does not brandish any objects in his hands.

d. Defendant Momirov is not confronted with any weapon or verbal threats of using a weapon by Plaintiff, and at no point does Plaintiff brandish a weapon.

e. One of the Responding Officer Defendants on scene is pointing his service weapon at Plaintiff's head.

f. One of the Responding Officer Defendants on scene is shining a flashlight at Plaintiff.

66. Defendant Momirov's kick knocks Plaintiff backwards into the ground.

67. Plaintiff's head smashes into the ground.

68. Plaintiff is apprehended by one of the Responding Officer Defendants.

69. Video of the kick exists.

70. A review of the video shows at the time that Defendant Momirov kicks Plaintiff, Plaintiff does not:

a. Reach for any weapon;

b. Brandish any objects in his hands;

c. Make a furtive gesture to indicate he was reaching for a weapon;

d. Make any threats of verbal harm or serious harm to Defendant Momirov;

e. Fight with or otherwise incite Defendant Momirov;

f. Get out of a kneeling position; and

g. Change direction or turn away from Defendant Momirov.

71. At the time he kicks Plaintiff, Defendant Momirov:

a. Sees Plaintiff has no weapon;

b. Encounters no violent threats from Plaintiff;

c. Observes Plaintiff on his knees with his hands raised above his head;

d. Is in an area that has outdoor and overhead parking lot lighting;

e. Has time to deescalate the scene and talk with Plaintiff;

f. Makes no effort to deescalate the scene and talk with Plaintiff; and

g. Does not talk with other officers on scene or the other detained individuals in the parking lot.

72. Immediately after Defendant Momirov kicks Plaintiff:

a. Defendant Momirov turns towards the other individuals and says: “You gotta comply.”

b. While handcuffing one of the individuals, Plaintiff’s brother, on the ground, Defendant Momirov states that he kicked Plaintiff “because he’s not complying.”

c. Plaintiff is detained by a Responding Officer Defendant.

d. Defendant Momirov speaks with Plaintiff, claiming that the kick was “nothing malicious” because he had told Plaintiff to “get on the ground.”

e. Defendant Momirov reports the use of force on Plaintiff to Defendant Legg.

f. Defendant Momirov takes Plaintiff into custody on charges of obstructing official business and resisting arrest.

73. Following the aforementioned events, and as a direct and proximate cause of same, Plaintiff experiences a concussion, soft tissue injuries, arthralgias, back pain, myalgias, neck pain, and neck stiffness.

74. At all relevant times herein, Defendants were acting under color of state law, as an agent of Ohio, and within the scope of their duties as law enforcement officers of the City of Canton.

75. At all relevant times herein, Defendant Momirov acted unreasonably, negligently, recklessly, wantonly, willfully, knowingly, intentionally and with deliberate indifference to the rights of Plaintiff, when he used excessive force against Plaintiff.

76. Before his employment with the City of Canton Police Department, Defendant Momirov had an extensive disciplinary record, to wit:

a. While employed with the Summit County Sheriff's Office, Defendant Momirov received a written reprimand for involvement in two vehicle crashes while on duty.

b. While employed with the Summit County Sheriff's Office, Defendant Momirov received a written reprimand for leaving a dangerous object next to a mentally unstable individual.

c. Through his background check with the City of Canton Police Department, Defendant Momirov was noted to have been a heavy drinker in high school and involved in several fights.

77. Before his employment with the City of Canton Police Department, Defendant Momirov applied for a position with the Akron Police Department but failed his written examination.

78. Defendant Momirov was subject to a professional review following his actions on August 24, 2024.

79. Defendant Momirov was terminated by Defendant Canton on September 4, 2024, for his actions.

## V. CLAIMS ALLEGED

### COUNT I
### 42 U.S.C. § 1983 - Excessive Force in Violation of the Fourth Amendment
### (Against Defendant Momirov)

80. All preceding paragraphs are incorporated as if fully re-written herein.

81. This claim is brought pursuant to Title 42 U.S.C. § 1983.

82. Title 42 U.S.C. § 1983 states, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

83. Title 42 U.S.C. § 1988 states in relevant part that in any action or proceeding to enforce a provision of 42 U.S.C. §1983, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

84. Accordingly, Plaintiff seeks fees as the prevailing party in this case.

85. Plaintiff also seeks expert fees as part of the attorney's fee award sought herein.

86. The Fourth Amendment to the United States Constitution states, in relevant part: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."

87. For decades, the United States Supreme Court has interpreted the Fourth Amendment to the United States Constitution to prohibit a police officer's use of excessive force during the arrest of an unarmed citizen. See, e.g., *Tennessee v. Garner*, 471 U.S. 1, 2 (1985). ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.").

88. While acting under color of state law, Defendant Momirov deprived Plaintiff of his well-established right to be free from excessive force, per the authority cited herein.

89. At all times relevant to this action, Plaintiff asserts that he had the clearly established constitutional right not to be subjected to excessive force while posing no threat of harm to Defendants or others.

90. In other words, on August 24, 2024, Defendant Momirov was only permitted to use the amount of force necessary under the circumstances to arrest and/or detain Plaintiff.

91. At all times relevant to this matter, Defendant Momirov was clothed with the authority of the state and misused that authority.

92. In this case, Defendant Momirov used excessive force, to wit:

a. Defendant Momirov intentionally kicked Plaintiff in the sternum and neck and injured Plaintiff while he posed no threats of death or serious bodily harm to him or others;

b. Defendant Momirov kicked Plaintiff in the sternum and neck while Plaintiff was not firing or pointing a deadly weapon or acting as though he had any deadly weapon.

c. Defendant Momirov kicked Plaintiff in the sternum and neck while Plaintiff was on his knees with his hands raised above his hand.

d. Defendant Momirov kicked Plaintiff in the sternum and neck while Plaintiff did not brandish any firearms or objects that could be perceived as a threat or weapon.

e. Defendant Momirov kicked Plaintiff in the sternum and neck while Plaintiff did not hold any firearms objects in his hands.

f. Defendant Momirov kicked Plaintiff in the sternum and neck without talking to any Responding Officer Defendants or detained individuals at the scene.

g. Defendant Momirov kicked Plaintiff in the sternum and neck while observing one of the Responding Officer Defendants pointing a service weapon at Plaintiff's head.

93. Defendant Momirov used force that was objectively unreasonable.

94. Defendant Momirov engaged in the above acts with a callous or reckless disregard for Plaintiff's federally protected rights.

95. By reason of the foregoing, used excessive force and injured Plaintiff, thereby depriving Plaintiff of the rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth Amendment of the United States Constitution to be free from gratuitous

and excessive force. Defendant Momirov's conduct manifested deliberate indifference to Plaintiff's constitutional rights.

96. As a direct and proximate result of Defendant Momirov's conduct, as set forth above, Plaintiff has been damaged, including but not limited to: Plaintiff suffered injuries, including but not limited to: a concussion, soft tissue injuries, arthralgias, back pain, myalgias, neck pain, and neck stiffness, and has endured pain and suffering, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, loss of sense of personal safety, dignity, and legal fees and costs.

**COUNT II**
**42 U.S.C. § 1983 - Failure to Intervene**
**(Against Responding Officer Defendants)**

97. All preceding paragraphs are incorporated as if fully re-written herein.

98. This claim is brought pursuant to Title 42 U.S.C. § 1983.

99. "A police officer who fails to act to prevent and the use of excessive force may be held liable when (1) the officer observed or had reasons to know that excessive force . . . was being used, and (2) the officer had both the opportunity and means to prevent the harm from occurring (citations omitted)." *Ontha v. Rutherford Cnty.*, *Tennessee*, 222 Fed. Appx. 498, 506 (6th Cir. 2007).

100. The Responding Officer Defendants were each on scene at the Plaintiff's detainment and/or arrest and/or bodily seizure, and each observed excessive force being used upon Plaintiff, to wit:

a. Regarding the arrest of Plaintiff: the Responding Officer Defendants witnessed an unarmed man complying with officer commands to get down on his knees while pointing service weapons at him (he was not fighting, fleeing, or

threatening harm to any person); and seeing the man do as he was told, they made room for Defendant Momirov to run towards Plaintiff and kick Plaintiff in the sternum, instead of using the least amount of force necessary to effectuate a detainment and/or arrest or asking Defendant Momirov to shorten, stop, or otherwise prevent Defendant Momirov's attack on Plaintiff.

b. Furthermore, the Responding Officer Defendants allowed, watched, went along with, and/or made light of Defendant Momirov's attack on Plaintiff without accurately reporting the unnecessary nature of Defendant Momirov's kick to Plaintiff's sternum given Plaintiff's compliance immediately prior to Defendant Momirov's kick.

101. The Responding Officer Defendants had both the opportunity and means to prevent the harm from occurring to Plaintiff, to wit:

a. The Responding Officer Defendants were within speaking distance of Defendant Momirov and had the ability to request Defendant Momirov to stop running toward Plaintiff.

b. The Responding Officer Defendants were in environments which afforded them the ability to see Plaintiff clearly, such that they could apprehend the fact that Plaintiff was unarmed, made no threatening gestures, and was compliant to officer commands before he was kicked in the sternum by Defendant Momirov, thereby putting them on notice that Defendant Momirov's physical attack on Plaintiff was unwarranted before the kick occurred.

c. The Responding Officer Defendants were in environments which afforded them the ability to hear Defendant Momirov running directly toward Plaintiff,

allowing them to realize when a physical attack was being prepared by Defendant Momirov, therefore allowing them to prevent the attacks that Plaintiff endured; and their ability to hear also revealed to them the fact that no Plaintiff made any verbal threats to any officer.

d. Immediately before Defendant Momirov kicked Plaintiff in the sternum, the Responding Officers had enough time to make room for the attack while pointing their service weapons at Plaintiff and the other individuals in the parking lot, stand back, and watch it, without doing anything to stop it.

102. Plaintiff therefore alleges that the Responding Officer Defendants had time with respect to the arrest of Plaintiff to perceive and intervene on behalf of an unarmed man who they knew or reasonably should have known was about to be attacked by Defendant Momirov while unarmed, compliant, and non-threatening.

103. As a direct and proximate result of the Responding Officer Defendants' actions, as set forth above, Plaintiff has been damaged, including but not limited to: undergoing medical care and/or enduring intense pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, loss of sense of personal safety, dignity, and legal fees and costs.

## COUNT III
## 42 U.S.C. § 1983 - Supervisory Liability
## (Against Supervisory Defendants)

104. All preceding paragraphs are incorporated as if fully rewritten herein.

105. This claim is brought pursuant to Title 42 U.S.C. § 1983.

106. "In addition to actively participating in the use of excessive force, an officer may also be liable if he supervised the officer who used excessive force or owed the victim a duty of

protection against the use of excessive force (quotes omitted)." *Casey v. Sanders*, No. 7:17-CV-145-KKC, 2018 WL 3078758, at *5 (E.D. Ky. June 21, 2018); citing *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); and *Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996)).

107. At all times relevant herein, Defendant Sergeant Legg and Defendant Chief Gabbard (the "Supervisory Defendants") had supervisory authority over the City of Canton Police Department, Defendant Momirov, and/or the Responding Officer Defendants.

108. The Supervisory Defendants knew or reasonably should have known of, and/or participated in, and/or condoned, and/or ratified:

a. Defendant Momirov's running onto the scene toward Plaintiff and attacking Plaintiff without gathering information from other officers or detained individuals at the scene;

b. Defendant Momirov's kicking of Plaintiff when Plaintiff posed no risk of physical or lethal harm to any officer or civilian, as stated herein above;

c. Defendant Momirov kicking Plaintiff when Plaintiff was kneeling on the ground with his hands raised in the air above his head and otherwise made no threats or violent gestures; and

d. Defendant Momirov failing to de-escalate the scene, thereby making the scene more dangerous to Plaintiff, the officers, and the general public.

109. The Supervisory Defendants knew or reasonably should have known that their acts and/or failures to act would likely cause the constitutional injury that befell Plaintiff, to wit: by endorsing, promoting, encouraging, and/or not intervening to stop Defendant Momirov's attack on Plaintiff and/or by allowing Defendant Momirov to continue to use force as a police officer and/or under the circumstances under this Complaint, Plaintiff experienced physical injuries and

emotional distress as a result of Defendants' reckless, wanton, and/or willful actions which were endorsed, condoned, and/or ratified by the Supervisory Defendants.

110. The Supervisory Defendants had a duty and/or were required by his/their training to take action to discipline and/or otherwise prevent Defendant Momirov from engaging in the above stated conduct.

111. The Supervisory Defendants also engaged in acts and omissions that were the product of a callous or reckless indifference to Plaintiff's constitutional rights, to wit:

a. The Supervisory Defendants trained, endorsed, condoned, and/or conducted Defendant Momirov to kick subjects in the manner detailed above; i.e., when the subject complied with officers' orders, and posed no direct threat to them or the life of another;

b. Defendant Momirov kicked Plaintiff in the sternum, despite having no reason to use physical force;

c. Despite having the aforesaid knowledge, the Supervisory Defendants continue to condone, ratify, and/or approve of the conduct and actions of Defendant Momirov.

112. As a result of their failures and/or abandonment of their supervisory duties, as stated above, the Supervisory Defendants created an environment that condoned the aforementioned misconduct and perpetuated and/or facilitated and/or aided Defendant Momirov in his unreasonably violent attack on Plaintiff.

113. As a direct and proximate result of the Supervisory Defendants' conduct, as set forth above, Plaintiff has been damaged, including but not limited to: Plaintiff suffered injuries, including but not limited to: a concussion, soft tissue injuries, arthralgias, back pain, myalgias,

neck pain, and neck stiffness, and has endured pain and suffering, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, loss of sense of personal safety, dignity, and legal fees and costs.

**COUNT IV**
**42 U.S.C. § 1983 - Municipal Liability pursuant to *Monell***
**(Against Defendant City of Canton)**

114. All preceding paragraphs are incorporated as if fully re-written herein.

115. This claim is brought pursuant to Title 42 U.S.C. § 1983.

116. Municipal bodies, such as Defendant City of Canton, and/or by and through their top policy makers, such as Defendant Chief Gabbard, are liable for constitutional violations under 42 U.S.C. § 1983 when execution of their official policies or customs deprives an individual of rights protected by the Constitution. *Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978).*

117. Official policies or customs can result from: (a) a formal regulation or policy statement; (b) an informal custom amounting to a widespread practice that, although not authorized by written law or express policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (c) the decisions of employees with final policymaking authority; (d) the ratification of such final policymakers of the decisions, and the basis for them, of subordinates to whom authority was delegated subject to those policymakers' review and approval; or the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

118. A municipality is liable under § 1983 when its agency's policy or custom, as evident from the allegation set forth above and below, is "closely related" to the ultimate constitutional

injury suffered by Decedent and/or Plaintiff, and/or causes or occasions the constitutional violation. *City of Canton*, *Ohio v. Harris*, 489 U.S. 378, 388 (1989).

**Unwritten Policy or Custom**

119. Defendant City of Canton retains an armed police force, the Canton Police Department, with the power to arrest citizens.

120. Defendant Chief Gabbard oversees the Canton Police Department, and he acts as the top policymaker and supervisor for the Canton Police Department.

121. Defendant Chief Gabbard is responsible for adopting, implementing, promulgating, and enforcing the policies, customs, and practices of the Canton Police Department as applicable to the officers under his command, and his decisions and acts can be fairly attributed to those of the Canton Police Department and/or Defendant Canton itself.

122. Defendant Chief Gabbard is ultimately responsible for the assignment of personnel for training purposes as well as having the final say as to what training does or does not occur for officers at the Canton Police Department.

123. Defendant City of Canton and Defendant Chief Gabbard is/are aware of a history and pattern of violent and unconstitutional police action at the Canton Police Department, where officers of the Canton Police Department engage in violent behavior that involves excessive force in violation of the Fourth Amendment, to wit:

a. On New Year's Day in 2022, a Canton Police Officer shot and killed a citizen who was celebrating the holiday with his family. Litigation for this incident is ongoing, and the Sixth Circuit Court of Appeals noted that the circumstance produced "one of the rare 'obvious' [situations]" in which *Garner*'s deadly force test "clearly establishes [a] violation" of Fourth Amendment principles.

*Williams v. City of Canton*, *et al.*, 168 F.4th 933, 942 (6th Cir. 2026) (citing *Garner* 471 U.S. at 11).

b. On April 18, 2024, two Canton Police Officers killed a citizen in police custody, Frank Tyson, and said officers are currently being prosecuted regarding said homicide and face litigation in this Court. *Tyson v. City of Canton*, *et al.*, No. 5:26-cv-00903.

c. On December 5, 2023, a Canton Police Officer shot and killed a citizen for walking away from him. *White v. City of Canton*, *et al.*, No. 5:25-cv-02610.

d. Multiple Canton Police Officers have been involved in other incidents of excessive force against Canton citizens, see *Conver*, *et al. v. City of Canton*, *et al.*, 5:2025-cv-00866; *Harman v. City of Canton, Ohio et al.*, 5:26-cv-223; *Gallagher v. City of Canton, Ohio et al.*, 5:2025-cv-00878.

124. The ongoing pattern, custom, and policy of excessive force within the Canton Police Department is so apparent that the department implemented further de-escalation training this year.

125. Defendant Canton endorses and/or implements and/or acquiesces in a long standing and unwritten policy or custom of shielding officers from consequences for their application of violence and/or use of excessive force and/or ignoring the use of excessive force on citizens during arrests, to wit:

a. For years prior to Defendant Momirov's attack on Plaintiff, Defendant Canton and/or Defendant Chief Gabbard acquiesced to a culture that accepts excessive force as a condition of police work at the Canton Police Department, to the extent that officers are trained and aided on how to avoid prosecution for their

violent actions by re phrasing and artfully summarizing their violent actions and encounters with citizens in police documentation;

b. For years prior to Defendant Momirov's attack on Plaintiff, Defendant f Canton and/or Defendant Chief Gabbard acquiesced to a culture of violence at the Canton Police Department by abandoning its/his duty under the Constitution for the State of Ohio and/or the Constitution of the United States to exercise control over the Canton Police Department by avoiding any study of the number of excessive force cases and violence involved in the arrest of citizens, by the Canton Police Department; and/or

c. For years prior to Defendant Momirov's attack on Plaintiff, Defendant City of Canton and/or Defendant Chief Gabbard perpetuated a culture of violence in the Canton Police Department by abandoning its/his duty under the Constitution for the State of Ohio to remove deputies and/or exercise control over the Canton Police Department by allowing officers to restrict and/or interfere with and/or hamper the internal oversight activities of the Canton Police Department.

126. The unwritten policy and/or customs stated herein is/are known to Defendant Canton and/or Defendant Chief Gabbard, who approved, benefitted from, ratified, encouraged, sanctioned, and/or promoted this policy or custom throughout the Canton Police Department.

127. Following the death of Decedent, Defendant Canton and/or Defendant Chief Gabbard continue to approve, ratify, encourage, sanction, and/or promote the policy or custom of ignoring excessive force and fostering a culture of violence as it/he has changed none of the training at the Canton Police Department.

128. To date, Defendant City of Canton and/or Defendant Chief Gabbard have never initiated any meaningful policy reviews or culture reforms regarding excessive force within the Canton Police Department.

129. The aforesaid unwritten policies or customs put Plaintiff and the general public at unreasonable risk of grievous bodily harm, injury, or death.

130. The aforesaid unwritten policies or customs as shown by the pattern of unreasonably violent conduct and events stated above were "closely related" to the ultimate constitutional injury suffered by Plaintiff and/or were in fact a cause of Defendant's attack on Plaintiff.

131. At all times relevant hereto, Defendant City of Canton initiated, authorized, condoned, ratified, and/or encouraged the aforesaid unwritten policies or customs.

132. Upon information and belief, Defendant Chief Gabbard and others from the Canton Police Department reviewed documents, discussed, and/or received details and information at the Canton Police about the manner in which officers deploy unreasonable force against citizens, including, without limitation, the manner in which Defendant Momirov kicked Plaintiff while he posed no immediate threat.

**Objective Indifference: Failure to Train and Discipline**

133. All preceding paragraphs are incorporated as if fully re-written herein.

134. Upon information and belief, Defendant City of Canton and Chief Gabbard do not adequately train regarding the use of force, to wit:

a. Defendants did not train, promulgate and/or enforce a use of force policy that trained officers as to the appropriate level of force to use in the situation

encountered by Defendant Momirov and the Responding Officer Defendants; and

b. Defendants did not train, promulgate and/or enforce proper de-escalation techniques to use in the situation encountered by Defendant Momirov and the Responding Officer Defendants.

135. Upon information and belief, Defendant Canton and Defendant Chief Gabbard do not routinely discipline Canton Police Department officers, such as Defendant Momirov, who use excessive force on citizens.

136. Upon information and belief, Defendant City of Canton and Defendant Chief Gabbard do not discipline Canton Police Department officers, such as Defendant Momirov, who fail to de-escalate situations where persons, like Plaintiff, are complying with officer commands and/or kneeling on the ground and/or raising their hands above their hand and/or posing no immediate threat.

137. The need for said training and discipline, including termination from employment, as aforesaid, is so obvious that the failure of Defendants to conduct said training and discipline establishes Defendants' objective deliberate indifference to the constitutional rights of Plaintiff and Decedent and all who live in the City of Canton.

138. As a direct and proximate result of Defendants' acts or failures to act and/or written and/or unwritten policies or customs and failure to train and discipline as aforesaid, Plaintiff has been damaged, including but not limited to: Plaintiff suffered injuries, including but not limited to: a concussion, soft tissue injuries, arthralgias, back pain, myalgias, neck pain, and neck stiffness, and has endured pain and suffering, anguish, embarrassment, humiliation, feelings of

powerlessness, harm to self-esteem, emotional distress, fear, anxiety, loss of sense of personal safety, dignity, and legal fees and costs.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, for not less than $1,000,000.00, including but not limited to:

A. Compensatory and consequential damages in an amount to be determined by the Court in excess of the Court's jurisdictional amount;

B. Punitive damages in an amount to be determined at trial, for the willful, reckless, and malicious conduct of Defendants;

C. Equitable relief, including that Defendant Canton be made to adopt an appropriate policy to prevent future instances of the type of misconduct described herein;

D. Attorneys' fees pursuant to 42 U.S.C. § 1988 and all other costs associated with this action; and

E. Any and all other relief that this Court deems equitable, just and proper.

## VII. JURY DEMAND

Plaintiff respectfully demands a trial by jury of the within matter.

Respectfully submitted,

/s/ *Robert F. DiCello*

Robert F. DiCello (0072020)
Kenneth P. Abbarno (0059791)
Joseph T. Frate (0101377)
Jordyn A. Parks (00102573)
**DICELLO LEVITT LLP**
8160 Norton Parkway, Third Floor
Mentor, Ohio 44060

Tel.: 440-953-8888
rfdicello @dicellolevitt.com
kabbarno@dicellolevitt.com
jfrate@dicellolevitt.com
jparks@dicellolevitt.com

***Counsel for Plaintiff***